**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.            ) | Criminal No. 18-325 |
| ) | |
| RYAN GRASHA, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

I. Introduction

Pending before the court is a motion filed by counsel on behalf of Ryan Grasha ("Grasha") for immediate release from the sentence of imprisonment he is currently serving at FCI-Elkton (ECF No. 51). Grasha seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i), due to the COVID-19 virus. Grasha is serving a 10-month prison term which commenced on March 10, 2020. He suffers from severe obesity and sleep apnea and was identified as medically vulnerable by FCI-Elkton officials (ECF No. 51 at 9-10). The government filed an expedited response opposing the motion (ECF No. 56).

II. Procedural History

On May 13, 2020, Grasha submitted a request for compassionate release to the warden at FCI Elkton (ECF No. 156-1). The warden denied the request 9 days later, by letter dated May 22, 2020 (ECF No. 156-2). There is no evidence that Grasha commenced an appeal of the warden's decision to the regional director or the Office of General Counsel of the Bureau of Prisons ("BOP"), as required under 28 C.F.R. §§ 542.15 and 571.63. Grasha argues that he did not need to complete the administrative process because he filed a request with the warden, which was

1

denied, and waited 30 days to file a motion with the court (ECF No. 51 at 13).

III. Legal Analysis

Before reaching the merits of Grasha's motion, the court must confront a threshold issue about exhaustion of administrative remedies on which other courts have disagreed. There are conflicting views within this district. *Compare United States v. Early*, No. CR 19-92, 2020 WL 2572276 (W.D. Pa. May 21, 2020) *with United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585 at *4 (W.D. Pa. May 29, 2020). The issue is fundamentally one of statutory interpretation – when is an inmate's motion for compassionate release ripe for disposition by the court?

    A. The statutory text

The First Step Act provides, in relevant part, that the court may reduce the term of imprisonment of a defendant if it finds that extraordinary and compelling reasons exist, "upon motion of the defendant **after the defendant has fully exhausted all administrative rights** to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **_or_ the *lapse* of 30 days from the receipt of such a request by the warden of the defendant's facility**, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

    B. Statutory exhaustion requirement

As an initial matter, Grasha contends that the government has waived the issue of exhaustion of administrative remedies. In its response, the government recognizes that Grasha failed to show how he exhausted his administrative remedies (ECF No. 56 at 3). The

government concedes, however, that his motion is ripe for decision by the court because more than 30 days have passed from the time Grasha submitted his request to the warden for compassionate release. *Id*.

The government's concession is not determinative and cannot confer authority on the court. As explained *Lin v. Attorney General,* 543 F.3d 114, 120 (3d Cir. 2008), unlike judicially-crafted exhaustion doctrines, "statutory exhaustion requirements deprive [the court] of jurisdiction over a given case." *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (statutory mandatory exhaustion language means a court may not excuse a failure to exhaust, even to take special circumstances into account).

The exhaustion requirement in this case is in the statute. *See United States v. Raia*, No. 20-1033, 954 F.3d 594, 597 (3d Cir. 2020) (describing exhaustion as a "statutory requirement"); *United States v. Greenlove*, No. 1:12-CR-194, 2020 WL 3547069, at *6 (M.D. Pa. June 30, 2020) ("even though Greenlove and, inexplicably, the government concur" that a compassionate release motion was ripe because 30 days passed after the inmate submitted his request to the warden, "the court finds that Section 3582(c)(1)(A)'s 'lapse of 30 days' language has not been satisfied, permitting judicial consideration of his motion."); *United States v. Wright*, 2020 WL 1976828 (W.D. La. April 24, 2020) ("[the court] has no power to waive the exhaustion requirement."); *United States v. Cox*, No. 418CR00017, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020) (court cannot make exception to the statutory exhaustion requirement for the exigent circumstances created by the COVID-19 pandemic); *but see United States v. Ng Lap Seng*, No. S5 15-CR-706, 2020 WL 2301202, at *4 (S.D.N.Y. May 8, 2020) (noting that the Second Circuit has not decided whether the exhaustion requirement is a non-jurisdictional claim-processing rule). The court concludes, as it must under *Raia*, that the First Step Act's exhaustion

requirement is statutory and not waivable by the parties or the court.  The court must, therefore, resolve whether Grasha satisfied the statutory exhaustion requirement.

### C.  The alternative approaches

As noted, courts have taken alternative approaches to the statutory exhaustion requirement.  As explained in *Early*, the majority of courts "have interpreted the statute to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days."  *Early*, 2020 WL 2572276 at *3 (collecting decisions).  In other words, if the warden does not respond to the inmate's request, the inmate may file a motion with the court after 30 days have expired.  On the other hand, if the warden does respond by denying the inmate's request, the inmate is obligated to exhaust fully all the administrative procedures before filing a motion with the court.  *Id.*

Other courts have determined that the statute provides two alternative avenues for inmates to seek relief in the court: (1) completion of the administrative process; or (2) the expiration of 30 days (the "minority approach").  *See Somerville*, 2020 WL 2781585 at *4 (concluding that nothing in the statutory text limits the fast-track option to circumstances in which the warden has failed to respond and that the 30-day clock runs from the warden's receipt of the original request).

### D.  Full exhaustion of administrative remedies clause

It is undisputed that Grasha did not fully exhaust his administrative remedies, as required by the first clause of 18 U.S.C. § 3582(c)(1)(A)(i).  The warden's denial of an inmate's request for compassionate release does not fully exhaust the administrative process.  There are two

additional steps that must be completed:

> An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in § 542.14(b) of this part. Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a); *see also* 28 C.F.R. § 571.63 (a denial by the General Counsel or Director, Bureau of Prisons, constitutes a final administrative decision).[1]

Grasha did not establish that, in the 2 months since the warden denied his request, he submitted an appeal to the regional director; submitted an appeal to the general counsel; or obtained a final administrative decision from the BOP. Accordingly, Grasha did not fully exhaust his administrative rights to appeal as required by § 3582(c)(1)(A)(i). Grasha did not "strictly comply" with the BOP's administrative procedures and cannot seek relief from the court under this provision. *Raia*, 954 F.3d at 597; *Early*, 2020 WL 2572276, at *4 ("Defendant must exhaust his administrative remedies before he may seek relief in this Court.").

    E.  The 30-day lapse clause

The court, therefore, must construe the 30-day lapse provision of the statute. Grasha contends that the minority approach should be followed by this court. In other words, Grasha argues he may seek relief in this court after 30 days, even if the warden timely responded and Grasha did not further pursue his administrative remedies.

---

[1] In *Seng*, the court observed: "BOP policy provides a clear timeline for the consideration of a compassionate release application, and provides that the BOP's failure to timely consider an appeal at any given stage will be deemed a denial, mitigating the concern that the BOP will prejudice a defendant's application by delaying an appeal." *Seng*, 2020 WL 2301202 at *7.

1. Statutory construction – general principles

To determine a statute's plain meaning, the starting point is "the ordinary meaning of the words used." *United States v. Geiser*, 527 F.3d 288, 294 (3d Cir. 2008). Standard reference works such as legal and general dictionaries are used to ascertain the ordinary meaning of words. *Id.*; *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* App'x A (A Note on the Use of Dictionaries) (2012).

If a statute includes language "reasonably susceptible to different interpretations," courts attempt to discern Congress's intent by employing canons of statutory construction. *United States v. Jackson*, 964 F.3d 197, 201 (3d Cir. 2020). There are two canons of construction that are particularly applicable in this case. First, the court must give effect to all the words of the statute. *See In re WR Grace & Co.*, 729 F.3d 332, 341 (3d Cir. 2013) (applying "well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous."); A. Scalia, *Reading Law* 174-79 (Surplusage Canon) (2012). Second, the court must read adjoining clauses in harmony to give effect to the provision as a whole. *See United States v. Morton*, 467 U.S. 822, 828 (1984) ("We do not ... construe statutory phrases in isolation; we read statutes as a whole. Thus, the words [in question] must be read in light of the immediately following phrase"); A. Scalia, *Reading Law* 180-82 (Harmonious-Reading Canon) (2012) (explaining that the requirement of harmony among provisions is more imperative than most canons of construction because intelligent drafters do not contradict themselves).

2. No plain meaning

The plain meaning approach cannot be used in this case because there are multiple

definitions of the word "lapse."  "Lapse" can be defined, among other ways, as: (1) "a slight error typically due to forgetfulness or inattention"; (2) "the termination of a right or privilege through neglect to exercise it within some limit of time"; and (3) "a passage of time." *Lapse*, Merriam-Webster.com Dictionary, Merriam-Webster (last visited, August 7, 2020), *available at* https://www.merriam-webster.com/dictionary/lapse.

In *Seng*, the court recognized the different definitions, but explained that the "passage of time" definition would "substantially undermine one of the goals of an exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes."  2020 WL 2301202 at *6.  Similarly, in *United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264 (D. Ariz. Nov. 8, 2019) (recognizing two ways to interpret "lapse" and concluding that the better reading required full exhaustion of administrative remedies), the court explained:

> "Lapse" often carries with it a connotation of a failure to act. For example, Black's Law Dictionary defines "lapse" as "[t]he termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred." Black's Law Dictionary 885 (7th ed. 1999). Thus, "lapse of 30 days" might be referring to the situation of a warden receiving a request but not acting on that request within 30 days. This reading would allow a defendant to go directly to court if a warden is not responsive to a request but, if a warden does act within 30 days, the defendant would be required to pursue an administrative appeal.

*Id.* at *3.  *But see United States v. Carter*, No. 2:19-CR-00078, 2020 WL 3458598, at *3 (S.D.W. Va. June 25, 2020) ("While this is a tempting interpretation, it does not square with the fact that the term 'lapse,' as used in the § 3582, modifies number of days or time period" and thus, the "passage of time" definition was intended).  In sum, the dictionary definitions do not yield a plain meaning of the word "lapse" and the court must examine the other canons of construction.

7

3. Surplusage canon of construction

The canon of construction about avoiding surplusage favors the majority interpretation. The statutory text of § 3582(c)(1)(A)(i) does not simply state that an inmate may seek relief in court after 30 days. Instead, the statutory text includes the phrase "the lapse of."

The majority interpretation provides meaning to the phrase, by interpreting it to create a futility exception to full exhaustion of administrative remedies. In other words, an inmate may seek relief in court if there is "the lapse of" (i.e., forgetfulness or inattention) 30 days. The minority approach, by contrast, construes the clause to automatically provide a right to seek relief in court "30 days from the receipt of such a request by the warden."  This reading renders the phrase "the lapse of" entirely unnecessary and mere surplusage.

4. Harmonious-reading canon of construction

The canon of construction about harmonious reading strongly favors the majority interpretation. Under a harmonious reading of the statute, the 30-day provision is understood as a complement to the administrative exhaustion provision. The two clauses are intended to work together – the first clause establishes a general rule about full exhaustion of administrative remedies and the second clause provides a limited exception to the general rule when there has not been a timely response (within 30 days) to the inmate's request. That reading eliminates any conflict between the clauses and gives effect to both clauses.

Under the minority approach, there is a direct conflict between the clauses. That minority approach causes the 30-day alternative in the second clause to conflict with the need to fully exhaust administrative remedies in the first clause. Under the minority approach, an inmate could ignore the administrative remedies, simply wait 30 days from his initial request, and seek

relief from the court.  As explained in *Seng*:

> [The "passage of time" interpretation] would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end. Indeed, given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days. If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act. For example, in the very next subsection of the statute, Congress implemented a fourteen-day deadline for the BOP to process a terminally ill defendant's request for compassionate release. *See* 18 U.S.C. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall ... in the case of a defendant diagnosed with a terminal illness ... not later than 14 days of receipt of a request for a sentence reduction ..., process the request.") Although I recognize that the First Step Act introduced several progressive reforms to the federal prison system, including "improving application of compassionate release," 164 Cong. Rec. H10346-04, H10362 (daily ed. Dec. 20, 2018), and "expedit[ing] compassionate release applications," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), I cannot conclude that the Act went so far as to render meaningless the BOP's consideration of such applications in the first instance without specific language evidencing such a Congressional intent.

2020 WL 2301202 at *6–7; *accord Greenlove*, 2020 WL 3547069 at *5 (statute's provision regarding full exhaustion of administrative remedies would be meaningless because defendants would forego appealing a warden's denial of their compassionate release request).

The court agrees with the majority approach.  In particular, the statutory mandate in the first clause to "**fully** exhaust[ ] **all** administrative rights" (emphasis added) is difficult to reconcile with an interpretation of the second clause that would excuse any need to do so.  It is unlikely that the drafters intended to create such a conflict.

5. The court of appeals' decision in *Raia*

The majority approach is consistent with the analysis in *Raia*.  In *Raia*, the court emphasized the BOP's statutory role in making compassionate release decisions and noted that

the "BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Raia*, 954 F.3d at 597.  The court instructed:  "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."  *Id*.

Engaging in only the first step of the administrative process, by submitting a request to the warden, does not constitute "strict compliance" with the exhaustion requirement.  The need to follow the BOP's procedures takes on added importance when there has been a timely initial response (within 30 days) to the inmate's request.  The statutory interpretation in the minority approach, enabling an inmate to seek relief in court based solely on the passage of time, is inconsistent with the teaching of the court of appeals in *Raia*.

6. Summary about the 30-day clause's scope

The court agrees with the majority interpretation and respectfully disagrees with the minority approach.  Although the minority approach is consistent with one dictionary definition of the word "lapse," permitting an inmate to seek relief in court based only on the passage of time would render the phrase "the lapse of" mere surplusage, would create a conflict between the two statutory clauses, and is inconsistent with the important role of the BOP as explained in *Raia*.

The facts of this case illustrate the problem with the minority approach.  The record reflects that Grasha submitted a request and received a written reply from the warden 9 days later.  There was no "lapse," i.e., forgetfulness or inattention, in this case to trigger the 30-day appeal period.  Grasha did not pursue the next steps of the administrative process.  Under the minority approach, the mere passage of 30 days would enable Grasha to seek relief from the

court. It would be counterintuitive to read a statute to require an inmate to "fully exhaust all" administrative remedies in one clause, but (in the next clause) to excuse an inmate's failure to fully pursue the administrative remedies – even when there has been a timely response to the inmate's request.

The more persuasive reading of the statute is that an inmate may seek relief in court upon demonstrating either: (1) completion of the BOP remedies, or (2) 30 days of forgetfulness or inattention during the administrative review, whichever is earlier. In sum, the 30-day lapse provision in § 3582(c)(1)(A)(i) does not permit Grasha to seek relief in district court under the facts of this case.

IV. Conclusion

The court is constrained to deny Grasha's motion as premature.  In *Raia*, the court of appeals instructed that "strict compliance" with the exhaustion requirement is of critical importance during the COVID-19 pandemic.  *Raia*, 954 F.3d at 597.  Grasha admittedly did not fully exhaust the BOP's administrative remedies and there was no "lapse" to trigger the 30-day provision.  As stated in *Raia*, Grasha's failure to comply with the statutory exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point." *Raia*, 954 F.3d at 597.

The court will not address the merits of Grasha's motion. The court will evaluate the merits of Grasha's request when a motion is properly before the court.

In accordance with the foregoing, Grasha's motion for compassionate release (ECF No. 51) will be DENIED without prejudice for the failure to comply with the statutory exhaustion requirement.

An appropriate order will be entered.


Dated:  August 10, 2020.

>                /s/ Joy Flowers Conti
>                Joy Flowers Conti
>                Senior United States District Judge