**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 18-325 |
| | ) | |
| RYAN GRASHA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

### I.  Introduction

Pending before the court is a motion for reconsideration (ECF No. 62) filed by counsel on behalf of Ryan Grasha ("Grasha").  Grasha seeks reconsideration of the court's opinion and order dated August 10, 2020, which denied his motion for compassionate release for failure to fully exhaust his administrative remedies.

### II.  Standard for Reconsideration

A motion for reconsideration should be granted only where the moving party establishes one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact to prevent manifest injustice.  *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). As recently explained in *FirstBank Puerto Rico v. Misite*, No. CV 17-09, 2019 WL 3843056, (D.V.I. Aug. 15, 2019): "[M]otions [for reconsideration] are not substitutes for appeals, and are not to be used as 'a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Id*. at *3 (citations omitted).

III. Procedural History

On May 13, 2020, Grasha submitted a request for compassionate release to the warden at FCI Elkton (ECF No. 156-1). The warden denied the request 9 days later, by letter dated May 22, 2020 (ECF No. 156-2). There is no evidence that Grasha commenced an appeal of the warden's decision to the regional director or the Office of General Counsel of the Bureau of Prisons ("BOP"). *See* 28 C.F.R. §§ 542.15 and 571.63.

On July 14, 2020, through counsel, Grasha filed a motion for compassionate release[1] in this court. The government filed a response in opposition, conceding that Grasha exhausted his administrative remedies, but opposing his release on substantive grounds. On August 10, 2020, the court issued an opinion and order (ECF Nos. 60, 61) denying Grasha's motion for failure to exhaust administrative rights, under the rationale of the court of appeals' precedential decision in *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020). In reaching the failure to exhaust conclusion, this court discussed the statutory interpretation issues identified by numerous courts around the United States. *United States v. Grasha*, No. CR 18-325, 2020 WL 4583874 (W.D. Pa. Aug. 10, 2020) (*citing, e.g., United States v. Ng Lap Seng*, No. S5 15-CR-706, 2020 WL 2301202 (S.D.N.Y. May 8, 2020); *United States v. Greenlove*, No. 1:12-CR-194, 2020 WL 3547069, at *6 (M.D. Pa. June 30, 2020)). The court did not address the merits of Grasha's motion, but noted it would do so when Grasha's request is properly before the court. *Id*. Grasha filed a motion for reconsideration and both sides submitted additional filings in support of their respective positions with respect to reconsideration (ECF Nos. 64, 65, 67, 68).

---

[1] The First Step Act provides, in relevant part, that the court may reduce the term of imprisonment of a defendant if it finds that extraordinary and compelling reasons exist, "upon motion of the defendant **after the defendant has fully exhausted all administrative rights** to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf ***or* the *lapse* of 30 days from the receipt of such a request by the warden of the defendant's facility**, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

IV. Discussion

    A.  *Raia* and *Harris* – general background

Gadsden seeks reconsideration based on the recent decision of the United States Court of

Appeals for the Third Circuit in *United States v. Harris*, No. 20-1723, -- F.3d --, 2020 WL

5198870 (3d Cir. July 20, 2020).  At the time this court issued its August 10, 2020 order, the

court of appeals' decision in *Harris* was unpublished and, therefore, was not precedential or

"controlling."  *See* 3d Cir. I.O.P. 5.7 (2018) ("The court by tradition does not cite to its not

precedential opinions as authority.  Such opinions are not regarded as precedents that bind the

court because they do not circulate to the full court before filing."); *Jamison v. Klem*, 544 F.3d

266, 278 n. 11 (3d Cir. 2008) ("We have steadfastly attempted to discourage District Courts as

well as attorneys from relying on nonprecedential opinions of this court.").  As noted, this court's

August 14, 2020 opinion and order relied on the court of appeals' precedential decision in *Raia*.

*Grasha*, 2020 WL 4583874 at *5 (discussing *Raia*).

On August 31, 2020, the court of appeals designated *Harri*s as a "Precedential Per Curiam

Opinion."                    https://ca3-ecf.sso.dcn/cmecf/jsp/CaseSummary.jsp?caseNum=20-

1723&incOrigDkt=Y&incDktEntries=Y (last visited September 4, 2020).  Grasha points to

*Harris* as an intervening change of controlling law.

There is no uniform approach by courts with respect to exhaustion of administrative rights

for compassionate release motions.  Even after *Harris*, the law within this circuit is somewhat

unsettled.  Recently, in *United States v. Gadsden*[2], No. CR 09-305, 2020 WL 5407914 (W.D. Pa.

---

[2] In *Gadsden*, the warden denied a request for compassionate release 4 days after receipt of the
inmate's request.  The inmate filed a motion with the court the same day (i.e., without waiting 30
days from the warden's receipt of his request or exhausting his BOP remedies).  After analyzing
*Raia* and *Harris*, the court found that the situation in *Gadsden* was not directly controlled by
either of those decisions.  The court looked to the statutory text as reviewed by *Raia* and *Harris*

Sept. 9, 2020), this court addressed the difficulties in applying *Raia* and *Harris* and reviewed the background of each of those decisions:

### 1. The *Raia* decision

In *Raia*, the inmate reported to prison on March 3, 2020 and made his request to the warden for compassionate release "shortly thereafter." 954 F.3d at 596. Before the Bureau of Prisons ("BOP") responded, and before 30 days passed, the inmate filed a compassionate release motion with the court. *Id.* The district court noted that it would have granted the motion and released Raia to home confinement. The district court denied the motion, however, because it concluded that the government's appeal of the underlying sentence divested it of jurisdiction. *Id.*

The court of appeals upheld the denial of the compassionate release motion on other grounds, because it found that the inmate did not exhaust his administrative remedies. The court explained that the BOP was not given 30 days to consider Raia's request and there was no adverse decision by the BOP for Raia to administratively exhaust. *Id.* at 597. The court noted the BOP's statutory role and its extensive and professional efforts to curtail the COVID-19 pandemic. The court emphasized the importance of complying with the BOP's administrative procedures: "Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*

The court of appeals' decision in *Raia* was issued approximately 30 days after the defendant's initial request to the warden. *Id.* at 596. The court of appeals rejected the defendant's request to remand his compassionate release motion to the district court. Instead, the court rejected this request "outright" and described the defendant's failure to exhaust administrative remedies as a "glaring roadblock" making remand to the district court futile. *Id.* at 597. It is difficult to reconcile the refusal to remand in *Raia* with *Harris'* interpretation of the "30-day lapse" clause, under which an inmate has an unqualified right to seek relief in court after 30 days. 2020 WL 5198870 at *1.

### 2. The *Harris* decision

In *Harris*, there had been lengthy administrative consideration of the inmate's requests for release based on his medical condition. As set forth in

---

and concluded that Gadsden failed to exhaust his administrative remedies because he filed his motion with this court without waiting for 30 days after the warden received his request.

the district court's December 20, 2019 order in *Harris*:

> Defendant submitted his initial request for compassionate release to the warden at FCI McKean, where he was then imprisoned, on or about January 20, 2014, fairly shortly after having been diagnosed with Becker's Muscular Dystrophy. That request was denied by the warden on March 31, 2015, and Defendant appealed to the Regional Director. After this appeal was denied, Defendant appealed to the Office of General Counsel. The request was finally administratively denied on March 16, 2016, and Defendant Harris was subsequently transferred to FCI-II Butner. On August 24, 2018, Defendant filed a new compassionate release request, which was denied by the warden at FCI-II Butner on September 18, 2018. Defendant filed a request for administrative remedy with the warden, which was denied on November 30, 2018, and then filed an administrative remedy with the BOP's Regional Director. However, on or about February 26, 2019, before receiving a decision from the Regional Director, Defendant Harris filed a habeas petition with this Court requesting that the Court take action pursuant to Section 3582(c)(1)(A). Indeed, the petition itself acknowledges that there had been "[n]o result yet" on this appeal. (Doc. No. 75 at 3).

(Crim. No. 10-80, ECF No. 80 at 3).

The February 26, 2019 habeas petition filed with the district court was recharacterized as a motion for compassionate release. *Harris*, 2020 WL 5198870 at *1. At that time, Harris' appeal to the BOP regional director had been pending for approximately 3 months.[3] Before the district court, the government argued, and the court agreed, that because the warden responded within 30 days, the inmate was required to completely exhaust the BOP's administrative remedy process.[4] *Id*.

On appeal, the government reversed its position taken before the district court and conceded that Harris exhausted his administrative remedies. The government asked the court of appeals to remand the matter for further proceedings on the merits of the motion.[5] *Id*. The court of appeals accepted

---

2 Pursuant to 28 C.F.R. § 542.18, the regional director's failure to respond within 30 days (i.e., by December 30, 2018) entitled Harris to consider the absence of a response as a denial at that level.

3 After Harris filed his petition with the court, on or about March 16, 2019, the Regional Director responded to Defendant's appeal, noting that his medical records indicated that his condition had changed since his initial request and instructing him to re-submit a request based on this change. (Crim. No. 10-80, ECF No. 80 at 3).

4 The government in its appellate brief in *Harris* cited an unidentified "position of the Department of Justice." 2020 WL 3100502 at 5. In another case, the court asked the prosecution to provide any formal written position taken by the government about the exhaustion requirements. The government responded by referring this court to its appellate brief in *Harris*. *See United States v. Grasha*, Crim. No. 18-325, ECF Nos. 66, 67. This court is unaware of

the government's concession of exhaustion. The appellate opinion in *Harris* is one page. The court concluded, without extensive analysis, that "the statute states that the defendant may file the [compassionate release] motion [in court] thirty days after the warden receives his request."[6] *Id.* In essence, the *Harris* court interpreted the "full exhaustion" clause and "30-day lapse" clause as independent avenues for seeking relief in court, whichever is earlier. *Id.* In other words, if a motion for relief is filed in court 30 days after the warden receives an inmate's request for compassionate release, the court may entertain the motion.

*Gadsden*, 2020 WL 5407914 at *2-3. In *Gadsden*, this court also addressed the conflicts

between *Raia* and *Harris*:

### 3. Conflicts between *Raia* and *Harris*

The court in *Harris* did not overrule *Raia*, which is also precedential. In the event of conflict, it is the older decision (*Raia*) that controls. *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008) (discussing Third Circuit Court of Appeals' IOP 9.1). *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [a higher court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [the lower court] should follow the case which directly controls, leaving to [the higher court] the prerogative of overruling its own decisions.").

The court of appeals in *Harris* did not discuss the split of authority among courts around the country and within this district about the proper statutory interpretation of the exhaustion requirements. *Compare Grasha*, 2020 WL 4583874, *and United States v. Early*, No. CR 19-92, 2020 WL 2572276 (W.D. Pa. May 21, 2020), *with United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585 at *4 (W.D. Pa. May 29, 2020). The decision in *Harris* did not comment on the lack of plain meaning of the word "lapse"[7] or address the conflict between its interpretation of the "30-day lapse" clause and the first clause of that section, which requires that defendants "**fully** exhaust[ ] **all** administrative rights." 18 U.S.C. § 3582(c)(1)(A)(i)[8] (emphasis added).[9]

---

any analysis supporting the government's statement in *Harris* that the DOJ corrected its position regarding exhaustion. The government in its appellate brief also did not address the statutory interpretation issues concerning the different meanings for the word "lapse" and the conflict between the "full exhaustion" and "30-day lapse" clauses.

[5] The government's concession of exhaustion is not determinative and cannot confer authority on the court. *United States v. Grasha*, No. CR 18-325, 2020 WL 4583874, at *1 (W.D. Pa. Aug. 10, 2020) (citing *Ross v. Blake*, —— U.S. ——, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016) (statutory mandatory exhaustion language means a court may not excuse a failure to exhaust, even to take special circumstances into account).

[6] *See United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264 * 3 (D. Ariz. Nov. 8, 2019).

[7] The First Step Act provides, in relevant part, that the court may reduce the term of imprisonment of a defendant if

> Harris cited *Raia* for the proposition that a defendant must "at least" ask the BOP to file a compassionate release motion and give the BOP 30 days to respond. *Harris*, 2020 WL 5198870 at *1 (citing *Raia*, 954 F.3d at 595). The court of appeals in *Harris* did not address the import of the phrase "at least" and concluded that an inmate **only** needs to file a request with the warden and to wait 30 days to file a motion with the district court. *Harris* also did not address the explanation in *Raia* about the critical role of the BOP. As noted above, it is difficult to reconcile the refusal to remand in *Raia* with *Harris'* interpretation of the "30-day lapse" clause. If an inmate under *Harris* has an unqualified right to approach the court 30 days after his initial request to the warden, why was Raia (whom the district court indicated it would release) not entitled to relief on remand when more than 30 days had passed after his initial request to the warden?

*Gadsden*, 2020 WL 5407914 at *4.

In *Gadsden*, this court articulated its concerns about apparent conflicts between the court of appeals' precedential opinions in *Harris* and *Raia* and noted further guidance was needed to harmonize the "full exhaustion" and "30-day lapse" clauses of the statute, 18 U.S.C. § 3582(c)(1)(A)(i). This court commented:

> This result [in *Gadsden*] reflects that further guidance is needed. If, like [in *Gadsden*], the warden denies the request within 4 days, why would a defendant have to wait the full 30 days when he already knows that the warden has denied it? Why would the BOP undertake full administrative review (which, based on the deadlines set forth in 28 C.F.R. § 542.18, would take more than 30 days) if an inmate has an unrestricted right to seek relief in court after 30 days? What policy would favor that outcome?

*Gadsden*, 2020 WL 5407914 at *5.

The court adheres to these concerns. The court recognizes, however, that *Harris* is an intervening change of controlling law. The court turns now to reconsideration of its August 10, 2020 order in light of *Harris*.

---

it finds that extraordinary and compelling reasons exist, "upon motion of the defendant **after the defendant has fully exhausted all administrative rights** to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **_or_ the _lapse_ of 30 days from the receipt of such a request by the warden of the defendant's facility**, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

[8] *See United States v. Ng Lap Seng*, No. S5 15-CR-706, 2020 WL 2301202, at *6-7 (S.D.N.Y. May 8, 2020).

B.  Application of *Harris* to Grasha's case

The factual situation in *Harris* differed from this case.  In *Harris*, there had been extensive administrative consideration of the inmate's medical condition and the inmate's appeal to the BOP regional director had been pending for approximately 3 months when he filed his motion for relief in the court.  (*See Gadsden*, 2020 WL 5407914 at *3) (summarizing background).  In this case, Grasha did not pursue any administrative remedies after receiving a denial from the warden.

The holding in *Harris*, however, covers the facts of this case. The court of appeals concluded in *Harris* that "the statute states that the defendant may file the motion thirty days after the warden receives his request."  2020 WL 5198870 at *1.  In other words, if a motion for relief is filed in court more than 30 days after the warden receives an inmate's request for compassionate release, the court may entertain the motion.  The court in *Harris* gave no express consideration to the status of the administrative appeal.

The court concludes that *Harris* is directly controlling law.  *Harris* applies because Grasha waited more than 30 days after his initial request to the warden before filing a motion in court. *Raia* is not directly controlling of Grasha's case because in *Raia*, the inmate did not wait 30 days or get a response from the warden before filing a motion in court.  954 F.3d at 596.

The concerns articulated in *Gadsden* remain, but do not prevent resolution of Grasha's motion.  This court is constrained to follow *Harris* and grant reconsideration.  *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [a higher court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [lower court] should follow the case which directly controls, leaving to [the higher

court] the prerogative of overruling its own decisions.").  The court concludes that Grasha's compassionate release motion must be addressed on its merits.

V. Conclusion

In accordance with the foregoing discussion, Grasha's motion for reconsideration (ECF No. 62) will be GRANTED.  Pursuant to *Harris*, because Grasha filed his motion in this court more than 30 days after his initial request was received by the warden, his compassionate release motion may be entertained by the court.  An evidentiary hearing is set for September 16, 2020.

An appropriate order will be entered.

Dated:  September 10, 2020.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge