IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.    ) | Criminal No. 18-325 |
| ) | |
| RYAN GRASHA,   ) | |
| ) | |
| Defendant.  ) | |

**OPINION**

I. Introduction

Pending before the court is a motion for compassionate release (ECF No. 51) filed by counsel on behalf of Ryan Grasha ("Grasha"). The government filed a response in opposition to the motion (ECF No. 56) and the parties submitted additional materials. The court conducted an evidentiary hearing on September 16, 2020 (Transcript, ECF No. 81).[1] The motion is ripe for disposition.

II. Procedural History

On January 22, 2019, Grasha waived indictment and pleaded guilty to count one of the information at Criminal Number 18-325 for possession of material depicting the sexual exploitation of a minor on January 31, 2018, in violation of 18 U.S.C. § 2252(a)(4)(B). He has no previous criminal history. In the plea agreement, the parties stipulated that the applicable advisory guideline range for imprisonment was 51-63 months. At sentencing, the court determined that the advisory guideline range for imprisonment was overstated, and recalculated it to 30-37 months. The court granted a significant downward variance and sentenced Grasha to a term of imprisonment of 10 months, and a 7-year term of supervised release. The fine and Justice for Victims of Trafficking Act ("JVTA") assessment were waived. Restitution of $2,000

---

[1] Citations to the transcript will be in the format Tr. at __.

to the victims was imposed, as negotiated by defense counsel.

Grasha was allowed to self-report. He reported to FCI-Elkton, located in Ohio, approximately 60 miles west of Pittsburgh, Pennsylvania, on March 10, 2020. His projected release date is January 8, 2021. The probation office reports no objections to his return to his mother's home in Pittsburgh, Pennsylvania, upon his release.

On July 14, 2020, Grasha filed a motion for compassionate release under the First Step Act. On August 10, 2020, the court denied the motion, finding that he failed to exhaust his administrative remedies. On August 31, 2020, the court of appeals designated its decision in *United States v. Harris*, No. 20-1723, -- F.3d --, 2020 WL 5198870 (3d Cir. 2020), as precedential. On September 14, 2020, the court granted Grasha's motion for reconsideration and concluded that he exhausted his administrative remedies under *Harris*.

Grasha was advised by the Bureau of Prisons ("BOP") that he was eligible for placement at the Renewal Center, a residential reentry center in Pittsburgh, Pennsylvania, on October 9, 2020. On September 2, 2020, Grasha signed a form advising the BOP that he did not want to participate in the reentry program at the Renewal Center.

III. Legal Standard

The First Step Act provides, in relevant part, that the court may not modify a term of imprisonment once it has been imposed, unless:

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), **after considering the**

>    **factors set forth in section 3553(a)** to the extent that they are applicable, **if** it finds that—
>
>    (i)   **extraordinary and compelling reasons** warrant such a reduction; **or**
>
>    (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, **and** a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>    **and** that such a reduction is consistent with applicable **policy statements** issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added). Under the statute, the court must address three considerations: (1) the § 3553(a) factors; (2) whether extraordinary and compelling reasons exist; and (3) whether a reduction is consistent with policy statements of the Sentencing Commission.

Grasha bears the burden of proof by a preponderance of the evidence. *United States v. Weaver*, No. 1:17-CR-235, 2020 WL 4810123, at *2 (E.D. Va. Aug. 18, 2020) ("As the party seeking relief and with no statutory guidance otherwise, a defendant bears the burden of proof in motions for compassionate release.") (citing *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005)); *United States v. Rodrigues*, No. 16-CR-00529-DKW-1, 2020 WL 5634310, at *1 (D. Haw. Sept. 21, 2020). Each of the three considerations will be addressed.

IV. <u>Discussion</u>

   A. Section 3553(a) Factors

The statute states that a court evaluates whether extraordinary and compelling reasons exist "**<u>after</u>**" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Morris*, No. 2:16-CR-00002-DBH, 2020 WL 4572315, at *2 (D. Me. Aug. 7, 2020) ("A court may only reduce a sentence based on extraordinary and compelling reasons <u>after</u>

3

considering the § 3553(a) factors") (emphasis added).

The court reviewed the § 3553(a) factors recently, on January 9, 2020, when imposing Grasha's sentence. With respect to the nature and circumstances of the offense, Grasha distributed child pornography. Regarding the defendant's characteristics, he has a great deal of familial support, but a history of mental health issues. The court concluded that a term of imprisonment of 10 months was sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of defendant, and facilitate payment of restitution to the victims. The court considered a fine and the JVTA assessment, but Grasha did not have the ability to pay the fine or JVTA assessment. The court considered the policy statements concerning lifetime supervision for child pornography offenses, but determined it was not warranted. The court concluded that any sentencing disparity with similarly situated defendants resulting from the downward variance was justified based upon the defendant's personal characteristics.[2] Neither party presented any reason in their submissions to this court or at the hearing on the motion for compassionate release which would warrant this court revisiting the § 3553(a) factors, although Grasha pointed out that due to the COVID-19 pandemic, the conditions of his imprisonment at FCI-Elkton are harsher than anticipated.

After re-reviewing the § 3553(a) factors, the court adheres to its determination that a 10-month term of imprisonment is sufficient, but no greater than necessary, to achieve the purposes of sentencing. He stipulated in the plea agreement to a guideline range of imprisonment of 51-63 months, although the court calculated the appropriate range to be 30-37 months of imprisonment. Grasha already received the benefit of a substantial downward variance. In consideration of the

---

[2] The court did not give any weight to the results of a polygraph examination in imposing sentence (ECF No. 45) and it will not consider those results now.

§ 3553(a) factors, a further reduction in Grasha's term of imprisonment is simply not appropriate.

                B.      Extraordinary and Compelling Reasons

While the court may not need to address the other statutory considerations because the § 3553(a) factors do not warrant the grant of the relief requested, *see Morris*, 2020 WL 4572315 at *2, the court will nonetheless address those matters for the completeness of the analysis. In his motion, Grasha cited two reasons for release: (1) the COVID-19 pandemic, and the severe outbreak at FCI-Elkton; and (2) his underlying medical conditions (i.e. his obesity and sleep apnea). At the evidentiary hearing, Grasha cited, for the first time, an additional underlying medical condition, i.e., his history of generalized anxiety disorder.

The government's position on whether extraordinary and compelling reasons for release exist was confusing. The government presented evidence that the COVID-19 outbreak at FCI-Elkton, although severe in March and April 2020, is now under control. The government conceded that obesity may establish an extraordinary and compelling reason for relief. *See* ECF No. 56 at 5 (severe obesity, defined as a body mass index ("BMI") greater than 30, is identified by the Centers for Disease Control ("CDC") as placing someone at increased risk of severe illness from the COVID-19 virus); Tr. at 122-25. At the same time, however, the government opposed release and pointed out that Grasha is "young and healthy" and was tested 7 times for the COVID-19 virus. All those tests were negative.[3] The government contended that sleep apnea is not a risk factor and that there is no evidence that Grasha communicated his generalized anxiety disorder to the BOP. As best the court understands it, the government's position is that Grasha's obesity is a threshold factor that allows the court to consider compassionate release, but

---

[3] His most recent COVID-19 test was on September 15, 2020.

the overall record in this case does not merit that relief.  Tr. 123-24.  The court will address each reason cited by Grasha.

1. Outbreak at FCI-Elkton

Sarah Dees, the health services administrator at FCI-Elkton, testified credibly at the hearing.  She agreed that in March and April 2020 (shortly after Grasha reported) a high number of inmates tested positive and had severe health conditions related to the COVID-19 virus.  In total, beginning in March 2020 to the present, there have been 950 positive tests for the COVID-19 virus among inmates at FCI-Elkton.  Tr. at 79.  At its peak, 50 inmates were in the hospital and 9 inmates died from the COVID-19 virus.  Tr. at 54, 81.  The last inmate death occurred on May 7, 2020.  Tr. at 98.  It has been months (more than 60 days) since any inmate was sent to the hospital due to the COVID-19 virus.  Tr. at 96-97.  The inmates currently hospitalized were part of the initial group sent to the hospital in March and April 2020 and have remained hospitalized since that time.  Tr. at 96.

Ms. Dees explained that FCI-Elkton implemented numerous measures to combat the pandemic in accordance with CDC guidance, including surveillance testing of all inmates during the initial outbreak in March and April 2020.  Tr. at 55.  Ninety percent of the inmates were placed in either isolation or quarantine.  Tr. at 55.  FCI-Elkton requires handwashing, wearing masks and social distancing.  Tr. at 57-59.

Each inmate is confined to a cohort.[4]  Each cohort contains approximately 150 inmates who are housed in a unit separate from other cohorts.  Tr. at 83.  At FCI-Elkton, there is

---

[4] The government defines a cohort as "a group of persons with a similar condition grouped or housed together for observation over a period of time." *Nat'l Immigration Project of Nat'l Lawyers Guild v. Exec. Office of Immigration Review*, No. 1:20-CV-00852 (CJN), 2020 WL 2026971, at *2 (D.D.C. Apr. 28, 2020) (citing ICE Pandemic Response at 4 n.3).

movement within a cohort, but an inmate does not have any contact with persons in another cohort. Tr. at 101. The cohorts obtain their food at separate times and the facility is cleaned between each cohort going to the dining room. Tr. at 101. Cohorts receive educational programming and recreate at separate times from other cohorts. Tr. at 101.

Currently, only 5 of the approximately 2500 inmates at FCI-Elkton are positive for the COVID-19 virus, and they are in isolation. Tr. at 57. *See* bop.gov/coronavirus/index.jsp (last visited September 15, 2020) (current COVID infections are 5 inmates, 2 staff). Those 5 inmates were asymptomatic and were subjected to a routine COVID-19 virus test prior to their step down from the facility. Tr. at 102. None of those 5 inmates were in Grasha's cohort. Tr. at 103. Grasha has had 7 COVID-19 tests; all of which were negative. His cohort does not have any positive COVID-19 virus cases at this time. Tr. at 103.

The court concludes that the <u>current</u> status of the COVID-19 pandemic at FCI-Elkton does not arise to an extraordinary and compelling reason for release. *Accord United States v. Thomason*, No. 19-CR-05, 2020 WL 4915833, at *2 (D. Minn. Aug. 21, 2020) ("FCI-Elkton was the site of a significant COVID-19 outbreak during which nine inmates died and has since been the subject of extensive litigation, but the situation there has improved.").

It is also noteworthy that Grasha declined to be transferred to a residential reentry center, which may have less restrictions and is not reported to have had an outbreak of the COVID-19 virus, like FCI-Elkton had in March and April 2020. His refusal to accept the transfer weighs in favor of concluding that, with all the precautions in place and the decline in the number of COVID-19 cases at FCI-Elkton, his continued placement in that institution for slightly more than 3 months is not an extraordinary and compelling reason for his compassionate release.

2. Medical conditions

a. Obesity

The evidentiary record about the severity of the risks associated with Grasha's obesity is mixed. Many people who are obese also have other complicating risk factors, such as age, diabetes or hypertension. Tr. at 41. When Grasha presented to prison, his only reported medical problems were obesity and intermittent sleep apnea. Tr. at 32. It is difficult to determine the increased COVID-19 risk if obesity is the sole risk factor. Tr. at 41. Dr. Amesh Adalja, an expert in the fields of infectious diseases, critical care and pandemic response, Tr. at 18, was called on behalf of Grasha. He testified credibly that individuals with obesity are at higher risk of having a severe case of COVID-19. Tr. at 19-20. A person with a BMI of 48 (i.e., morbidly obese), like Grasha, would pose greater concern than a person with a BMI of 31 (i.e., slightly obese). Tr. at 21. Because Grasha is in a congregate setting (a prison), he is at higher risk of contracting the COVID-19 virus. Tr. at 23.

On the other hand, Dr. Adalja testified that all the medical tests taken by Grasha in prison were within normal ranges and showed that Grasha was healthy. He had no heart rate, blood pressure or blood oxygen level issues. Tr. at 33. Grasha never requested medical treatment at FCI-Elkton. A younger person with no serious risk factors has a reduced risk for a severe COVID-19 reaction. Tr. at 35-36. When someone is morbidly obese, a younger age would mitigate some of the risk of the obesity. Tr. at 44. Here, Grasha is 26 years old and presented with only one serious health risk (obesity). He falls within the category of obese persons who have a reduced risk for a serious COVID-19 reaction. The situation in *United States v. Connell*, No. 18-281, 2020 WL 2315858 (N.D. Cal. May 8, 2020) (child pornography offender given

compassionate release), which was discussed extensively in Grasha's brief (ECF No. 59 at 3-4), is distinguishable. The inmate in *Connell* was 69 years old. *Id*. at *6. Another factor mitigating risk is there are now therapeutics, such as Dexamethasone, that may decrease the severity of the COVID-19. The new therapeutics were not available in March 2020. Tr. at 40-41.

The court concludes that Grasha's obesity, although it presents a serious risk, does not arise to an extraordinary and compelling reason for release.

### b.  Sleep apnea

Dr. Adalja testified that sleep apnea is not a COVID-19 virus risk factor. Tr. at 39. Grasha reported intermittent sleep apnea. Tr. at 32. Grasha pointed out that he is prescribed a CPAP machine, but inadvertently left it in his car when he reported to FCI-Elkton. He requested a CPAP machine, but has not yet been provided one. Tr. at 39. CPAP machines pose a problem because they may aerosolize the COVID-19 virus, and it is unlikely that Grasha will be provided a CPAP during the 3 months he has left to serve at FCI-Elkton. Tr. at 39. The court concludes that Grasha's intermittent sleep apnea does not arise to an extraordinary and compelling reason for release.

### c.  Anxiety

Although not raised in his motion, the court will consider whether Grasha's anxiety provides an extraordinary and compelling reason for compassionate release. The expert report of Dr. Michelle Joy, attached to the sentencing memorandum and admitted under seal as Def. Ex. B, confirms that Grasha has a history of generalized anxiety disorder. Dr. Adalja testified that a person with a generalized anxiety disorder would have more pronounced symptoms of the disorder due to the pandemic and being unable to protect himself from it. Tr. at 29. Grasha, however, never informed the medical staff at FCI-Elkton about this condition and the BOP's

medical records reflect he never sought treatment for it. Tr. at 27. More pertinent to the court, as noted previously, Grasha rejected an opportunity to be reassigned in early October 2020 away from FCI-Elkton. The transfer to a residential reentry center would have allowed Grasha to be closer to his family and to resume his former job at a restaurant. The court concludes that the anxiety Grasha may be experiencing at FCI-Elkton – either alone or in combination with his other underlying medical conditions -- does not arise to an extraordinary and compelling reason for release.

### C. Sentencing Commission Policies

The statute requires the court to consider the Sentencing Commission policy on compassionate release set forth at U.S.S.G. §1B1.13. Pursuant to the guidelines manual, the court may reduce a sentence if:

> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) **The defendant is not a danger to the safety of any other person or to the community**, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

(Emphasis added).

The term "Extraordinary and Compelling Reasons" is defined in U.S.S.G. § 1B1.13, Application Note 1:

> (A) **Medical Condition of the Defendant**.--
>     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>     (ii) The defendant is--
>         (I) suffering from a serious physical or medical condition,

>    (II) suffering from a serious functional or cognitive impairment, or
>    (III) experiencing deteriorating physical or mental health because of
>    the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> (C) **Family Circumstances**.--
>    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (D) **Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Grasha does not fall within the Medical Condition prong because, although he suffers from a serious medical condition (obesity), there is no evidence that his ability to provide self-care within FCI-Elkton is substantially diminished. His obesity is not an extraordinary or compelling reason for compassionate release, for the reasons explained above. The Age and Family Circumstances prongs are not applicable and Grasha did not argue to the contrary. He, therefore, must fit into the "other reasons" prong. The court recognizes that U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act, and that the Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Somerville*, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce defendant's sentence). For the same reasons discussed above in part IV(B) of this opinion, the

court concludes that Grasha did not demonstrate other extraordinary and compelling reasons for compassionate release.

The government emphasizes the policy consideration about danger to the community. The government argues that Grasha represents a danger to the community because he is a sex offender who distributed child pornography from his home. The government notes that Grasha's crime is defined as a crime of violence and he received a large downward variance.

The "danger to the community" policy is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant." As discussed in part IV(A) of this opinion, the court determined that a sentence of 10 months was sufficient, but no greater than necessary, to accomplish that purpose. The court adheres to that determination.

V. Conclusion

The court recognizes the potential for Grasha's exposure to the COVID-19 virus at FCI-Elkton.  Unfortunately, that potential exists anywhere in the community. Tr. at 36-37. The court is sympathetic to his concerns about his obesity, sleep apnea and generalized anxiety order and possible exposure to COVID-19 infected individuals.  Speculation concerning possible future conditions, however, does not constitute a "compelling reason" for release.  In other words, his current arguments for release, especially considering the greatly improved conditions at FCI-Elkton, do not outweigh the factors considered by the court in imposing his original sentence. In accordance with the foregoing discussion, Grasha's motion for compassionate release (ECF No. 51) will be DENIED without prejudice to reassert that kind of motion if his medical conditions change or the status of the COVID-19 outbreak at FCI-Elkton changes.

An appropriate order will be entered.

Dated:  September 24, 2020.

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge